UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT E.D.N.Y.

★ SEP 2 6 2014 ★

BROOKLYN OFFICE

-------------------------------------------------------------- X
                                    :

WILFREDO AVILES,                  :     13-CV-1153 (ARR)

           Petitioner,      :     NOT FOR PRINT OR
                                  :     ELECTRONIC
     -against-               :     PUBLICATION

MICHAEL CAPRA,                :     OPINION & ORDER

           Respondent.    :

-------------------------------------------------------------- X

ROSS, United States District Judge:

    Petitioner, Wilfredo Aviles, appearing pro se, filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his New York criminal conviction for two counts of

second-degree murder. Petitioner's conviction followed two trials, one declared a mistrial, in

which the central question was whether witnesses properly identified petitioner as the person

who shot and killed two individuals in a Brooklyn parking garage. Petitioner asks the court to

overturn his conviction on the grounds that (1) the evidence at petitioner's second trial was

legally insufficient to establish petitioner's identity as the shooter beyond a reasonable doubt and

(2) petitioner received ineffective assistance of appellate counsel. For the reasons stated below,

petitioner's application is denied.

1

**A.** **The Double Homicide**

The following facts were adduced at both of petitioner's trials.[1]

On the night of November 28, 2005, Natasha Huggins was in a Brooklyn parking garage with her two brothers, Christian Throne and Tyrell Huggins, and auto mechanic Angus Mitchell. They were attempting to start Natasha Huggins's car. Mitchell had gone to retrieve his own car when three men entered the garage. One of the men, Brian McCaskill, left the garage immediately after arriving and remained standing outside of the structure. Another man, Claude Long, and an unidentified third individual approached Natasha Huggins and her brothers. A discussion ensued and around a minute later, the third man pulled out a gun and shot both of the brothers. When Mitchell returned to that area of the garage, he witnessed the shooter, who was then still pointing the gun in the direction of Natasha Huggins's car, the location where the brothers had been shot. Mitchell and the shooter made eye contact before the shooter and Long fled the garage. Natasha Huggins telephoned the police. Later that night, her brothers were pronounced dead.

The next day, Natasha Huggins refused to speak to the police about the shooting. She would later testify that her refusal stemmed from her fear of the unidentified shooter. Soon thereafter, however, she changed course and met with police detectives. She told them that she did not know the shooter, but she described him as a heavy-set man with a light brown complexion who wore a gray hooded sweatshirt at the time of the shooting. Mitchell provided a description of the shooter that matched that provided by Natasha Huggins. Surveillance video from a nearby restaurant was consistent with the two witnesses' accounts. The video depicted a

---

[1] The facts in the "Background" section are all taken from the transcripts and records of the proceedings in state court.

stocky man of medium complexion, dressed in a hooded sweatshirt. The man walked with two smaller, darker-skinned individuals in the direction of the parking garage. The same three individuals were captured by the video camera fleeing the area a few minutes later. In the days after the shooting, no witness was able or willing to identify the shooter.

On June 20, 2006, Detective Christopher Hennigan arrived at an unrelated crime scene where petitioner had been shot. He observed that petitioner matched the descriptions of the individual who had shot Throne and Tyrell Huggins that Mitchell and Natasha Huggins had provided to the police soon after the shootings. Before petitioner left in an ambulance, petitioner told Detective Hennigan his name and stated that he was also known by "Reef" and "Pun." At the scene, near where petitioner had lain wounded, Detective Hennigan found a cellphone that he determined belonged to the mother of Brian McCaskill.

Four months later, on October 19, petitioner was brought to the police precinct in order to participate in a lineup. Petitioner was noticeably thinner than he had been when Detective Hennigan saw him in June. Viewing the lineup, Natasha Huggins identified petitioner as the shooter, observing that he appeared to have lost weight since the night that her brothers were shot. Mitchell stated that petitioner had the same face as the shooter, but was not certain as to his identity because the man in the lineup appeared to weigh less than the man who had killed Christian Throne and Tyrell Huggins.

Petitioner was arrested following the lineup.

## B.    Pre-Trial Proceedings

Prior to the commencement of trial, petitioner's trial counsel moved to suppress the lineup identifications and petitioner's post-<u>Miranda</u> statements to the police on the grounds that

the lineup was unduly suggestive and that the statements were not made voluntarily. A Huntley/Wade hearing was held.

Detective Hennigan testified that on June 22, 2006, he showed Natasha Huggins a photo array that included a picture of petitioner. Natasha Huggins did not identify anyone. The detective later showed the same photo array to an individual named Lavar Edwards, who would testify at petitioner's second trial. Edwards identified petitioner's photograph as the picture of the man Edwards had seen with a gun outside the garage where Throne and Tyrell Huggins were killed. A second detective, Christopher Scandole, testified that, following Edwards's identification of petitioner, he went with two fellow detectives and a police sergeant to petitioner's residence. Detective Scandole and the sergeant were admitted into the home by petitioner's father. When Detective Scandole inquired of petitioner whether he would be willing to speak with them at the police precinct, petitioner agreed to do so.

The court denied petitioner's suppression motion. Of relevance to petitioner's habeas petition, at the end of the Huntley/Wade hearing, petitioner's counsel requested a Dunaway hearing to "ask some questions about what information [Detective Scandole] possessed prior to going to" petitioner's home. The prosecutor argued that Edwards's photo array identification established probable cause to arrest petitioner, thus obviating the need for a hearing focused on the legality of his arrest. Agreeing with the prosecutor, the judge denied the Dunaway request.


## C.   The First Trial

In addition to the trial evidence recited above, the prosecutor at the first trial also adduced the following identification evidence: First, Natasha Huggins identified petitioner as the shooter in court, bolstering her previous identification of petitioner in the police lineup. Second, Mitchell

made an in-court identification of petitioner, and he explained that while petitioner's body type did not match that of the shooter, he had recognized petitioner's face in the lineup. Third, two additional witnesses, Bernard Rogers and Ezekiel Briggs, who saw the three men approach the parking garage on the night of November 28, 2005, provided general descriptions of the individual alleged to be the shooter by Natasha Huggins and Mitchell.[2]

After lengthy deliberations, the jury was unable to reach a verdict. The court declared a mistrial.

## D.  Second Trial

The evidence at petitioner's second trial again included in-court identifications of petitioner by Natasha Huggins and Mitchell, yet it differed from that adduced during the first trial in three notable ways.

First, Lavar Edwards, who had identified petitioner in the photo array shown to Edwards by Detective Hennigan, testified. It was not until May 2006, when he was arrested on gun-related charges, that Edwards told Detective Hennigan that he had information on the Throne and Tyrell Huggins murders. At petitioner's second trial, Edwards testified that he had been outside of the parking garage prior to the shooting when petitioner arrived with McCaskill and Long. Edwards had previously seen petitioner around the neighborhood and knew him by the nickname "Reef." He also knew that petitioner had a tattoo on his neck that read "Denise." When the three men reached Edwards and two of his friends outside of the garage, both Long and petitioner demanded to know the whereabouts of Throne and Tyrell Huggins. Petitioner pulled out a weapon. Another individual standing in close proximity told Long, McCaskill, and petitioner that

---

[2] From the witness stand, Rogers identified petitioner's brother, sitting in the gallery, as the shooter. The prosecutor later called a witness who testified that petitioner's brother had never been heavy-set, a prime physical characteristic attributed to the shooter by a number of witnesses, including Rogers himself.

the brothers were in the parking garage. Long and petitioner entered the garage, while McCaskill remained outside of it. Edwards heard approximately four gunshots—a number consistent with the testimony of both Natasha Huggins and the medical examiner—and saw petitioner flee the garage soon thereafter. Edwards identified petitioner in court as the individual he had seen with the gun and testified to his earlier identification of petitioner in the police lineup, at which he had correctly noted petitioner's weight loss.

Second, the prosecution introduced a recording of the 911 call that Natasha Huggins had placed immediately after the shooting. Much of the call was inaudible, though Natasha Huggins can be heard screaming "Bezo," the nickname of Brian McCaskill, whom she testified had arrived at the garage with petitioner and Long. The prosecution relied upon the recording to illustrate the hysteria that gripped Natasha Huggins following the shooting, which, the prosecutor argued, helped to explain why she had been afraid to identify petitioner in the photo array in the months before the lineup.

Lastly, Bernard Rogers and Ezekiel Briggs, who both testified at the first trial, did not testify at the second.

After one day of deliberations, the jury pronounced petitioner guilty of two counts of murder in the second degree. Petitioner received two consecutive sentences of 25 years to life imprisonment.

### E.    Post-Conviction Proceedings

Petitioner appealed his conviction to the New York Appellate Division in December 2010. On his behalf, petitioner's appointed appellate counsel argued that the evidence establishing petitioner's identity as the shooter was legally insufficient, that petitioner's

conviction was against the weight of the evidence, that petitioner's sentence was unduly harsh and excessive, and that the court had considered improper factors in sentencing petitioner to a maximum sentence. The Appellate Division affirmed petitioner's conviction in August 2011. People v. Aviles, 927 N.Y.S.2d 788 (App. Div. 2011). Petitioner's request for leave to appeal to the New York Court of Appeals, filed by appellate counsel, was denied on February 29, 2012. People v. Aviles, 965 N.E.2d 963 (N.Y. 2012).

Petitioner then sought a writ of habeas corpus from this court, filing a timely petition on February 24, 2013. Soon thereafter, the court stayed the habeas proceeding while petitioner sought a writ of error coram nobis in state court. Petitioner's coram nobis petition identified a series of errors, described in detail below, that appellate counsel allegedly committed in representing petitioner on direct appeal. The Appellate Division denied the coram nobis petition on January 22, 2014, People v. Aviles, 978 N.Y.S.2d 882 (App. Div 2014), and the Court of Appeals denied petitioner's request for leave to appeal the Appellate Division's decision on April 14, 2014. People v. Aviles, 22 N.E.3d 912 (N.Y. 2014).

## DISCUSSION

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

## B.    Petitioner's Insufficiency of the Evidence Claim

For his first claim, petitioner argues that he is entitled to habeas relief because the identification evidence presented at his second trial was insufficient to establish his identity as the shooter beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307 (1979). The Appellate Division found petitioner's insufficiency claim to be procedurally defaulted and, alternatively, without merit. This court holds that the Appellate Division's procedural ruling bars

consideration of petitioner's insufficiency claim on habeas review and, in any event, finds the evidence more than sufficient to support petitioner's conviction.

When a state court precludes review of a federal constitutional claim on an "independent and adequate" state procedural ground, a federal court may not consider the merits of the federal claim on habeas review. Coleman v. Thompson, 501 U.S. 722, 730 (1991). To be considered "independent," "the last state court to render judgment must clearly and expressly state[] that its judgment rest[ed] on a state procedural bar." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997) (alterations in original) (internal quotation marks omitted). If so, "federal habeas review is foreclosed . . . even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). To be considered "adequate," the state procedural ground must be "firmly established and regularly followed." Lee v. Kemna, 534 U.S. 362, 376 (2002). Yet, the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Id. (setting forth three factors to guide courts' inquiry into exorbitant application of state procedural rules).

There are two exceptions to the rule barring a federal habeas court's consideration of a claim previously denied on an independent and adequate state procedural ground. First, a federal court will excuse a procedural default if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750. Second, a federal court will consider a procedurally defaulted claim when the petitioner can "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Id. Such an "extraordinary case" exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

At issue in petitioner's case are the preservation requirements of New York's contemporaneous objection rule. This rule requires that a defendant moving to dismiss based on the insufficiency of the evidence present an argument at trial "specifically directed at the alleged error." People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995) (internal quotation marks omitted). The state's highest court has "repeatedly made clear" that a general motion against the sufficiency of the evidence at the end of trial will not preserve a sufficiency challenge for appeal. People v. Hawkins, 900 N.E.2d 946, 950 (N.Y. 2008); see also People v. Neptune, 652 N.Y.S.2d 991, 991 (App. Div. 1997) (holding that "defendant's motion to dismiss for the failure to prove a prima facie case was not sufficiently specific to preserve" claim that prosecution's identification evidence failed to establish defendant as perpetrator beyond a reasonable doubt).

In petitioner's case, the Appellate Division determined that petitioner "failed to preserve for appellate review his challenge to the legal sufficiency of the identification evidence." Aviles, 927 N.Y.S.2d at 788. While petitioner's trial counsel had moved for dismissal on the ground that the prosecution had failed to make a prima facie case and had renewed this general motion at the end of trial, these objections did not possess the specificity required to preserve petitioner's challenge for appeal. The Appellate Division's decision thus established an independent bar to petitioner's federal insufficiency claim.

This independent procedural bar is also adequate. Federal courts have consistently recognized New York's "contemporaneous objection rule . . . as a firmly established and regularly followed independent state procedural ground . . . barring federal review of a federal claim." Robinson v. LaClair, No. 09-CV-3501 (KAM), 2011 WL 115490, at *5 (E.D.N.Y. Jan. 13, 2011) (finding procedural bar applicable to, inter alia, petitioner's legal insufficiency claim); see also Kozlowski v. Hulihan, 511 F. App'x 21, 25 (2d Cir. 2013); Richardson v. Greene, 497

10

F.3d 212, 218 (2d Cir. 2007); Garvey v. Duncan, 485 F.3d 709, 718 (2d Cir. 2007); Garcia v. Lewis, 188 F.3d 71, 76-78 (2d Cir. 1999); Bossett v. Walker, 41 F.3d 825, 829 n.3 (2d Cir. 1994). Because there is no evidence that the rule's application in petitioner's case was exorbitant, there is no reason to depart from these previous holdings.[3]

Furthermore, despite petitioner's arguments to the contrary, neither of the exceptions under which the court could consider petitioner's defaulted claim applies. First, petitioner insists that cause and prejudice can be found in the allegedly ineffective assistance he received from his trial counsel. However, the question of prejudice turns on the same issues as the merits of petitioner's insufficiency claim. Because the evidence, for the reasons set forth below, easily satisfies any attack on its sufficiency, petitioner cannot demonstrate any prejudice resulting from trial counsel's failure to properly preserve a sufficiency challenge for appeal. See Carrier, 477 U.S. at 494 (making clear that exception to procedural bar requires both cause and prejudice).

Second, petitioner argues that he is actually innocent and failure to consider his insufficiency claim will result in a fundamental miscarriage of justice. Petitioner's theory of actual innocence rests on the non-prosecution of Brian McCaskill. He argues that because the prosecution held out McCaskill as complicit in the double homicide, the decision not to try him as a co-conspirator reveals that the prosecution has evidence that exculpates McCaskill and, in turn, exculpates petitioner. Yet, what petitioner presents is pure conjecture, and without any "new reliable evidence," the miscarriage of justice exception will not apply. Schlup v. Delo, 513 U.S. 298, 324 (1995).

---

[3] Petitioner does not raise any arguments regarding the exorbitant application of the contemporaneous objection rule. The court nonetheless notes that federal courts have found such arguments to fall short in cases with similar fact patterns. See, e.g., Yara v. Ercole, 558 F. Supp. 2d 329, 337 (E.D.N.Y. 2008) (finding no exorbitant application of contemporaneous objection rule to petitioner's specific insufficiency claim on appeal despite fact that petitioner had "moved the trial court to dismiss the charges against him because they were unsupported by the evidence"); McCrae v. Artus, No. 10-CV-2988 (RRM), 2012 WL 3800840, at *6 (E.D.N.Y. Sept. 2, 2012) (similar).

Because petitioner's case presents none of the exceptional circumstances that would excuse his procedural default, the court finds petitioner's legal insufficiency claim barred by an independent and adequate state procedural ground. The court thus rejects petitioner's first ground for habeas relief.

A review of the merits of petitioner's insufficiency claim would yield the same result. To prevail on a claim that the evidence presented at trial was insufficient to establish petitioner's guilt, petitioner would need to show that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. The court must view the evidence in the light most favorable to the government, id. at 319, and defer "to the jury's assessment of witness credibility and its assessment of the weight of the evidence." United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008) (internal citations and quotation marks omitted). In asserting an insufficiency claim on habeas, petitioner faces the additional burden of demonstrating that the Appellate Division was unreasonable in its adjudication of petitioner's claim. See Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007).

In petitioner's second trial, the prosecution presented three witnesses who identified petitioner as the shooter. Natasha Huggins identified petitioner in court and testified to her previous identification of petitioner in the police lineup, where she correctly observed that petitioner had lost weight. Lavar Edwards identified petitioner in court and testified to his line-up identification as well. Angus Mitchell also identified petitioner in court and, while not definitively identifying petitioner in the lineup, made clear that petitioner's face, as he observed it at the lineup, matched the face of the shooter. The three witnesses' testimony revealed no notable differences in the witnesses' recollection of the night of the double murder. Each witness provided a consistent description regarding the shooter's build and complexion, and Natasha

12

Huggins and Edwards provided similar accounts of the shooter's arrival at and flight from the parking garage.

The determinative question facing the jury was whether they believed the testimony of Natasha Huggins, Mitchell, and Edwards identifying petitioner as the shooter. Petitioner's trial counsel argued forcefully why the jury should not credit this testimony. The jury did so regardless. This decision was the jury's to make, United States v. Bala, 236 F.3d 87, 93-94 (2d Cir. 2000), and there are no grounds on which the court can set this decision aside.


## C.    Petitioner's Ineffective Assistance of Appellate Counsel Claim

For his second claim, petitioner argues that he is entitled to habeas relief because his appellate counsel was constitutionally inadequate. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). Petitioner exhausted this claim in state court by filing a writ of coram nobis with the Appellate Division and by seeking leave to appeal the Appellate Division's unfavorable ruling to the Court of Appeals.

To establish a violation of the Sixth Amendment right to effective assistance of counsel, petitioner must meet the two-prong test established by Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (internal citation and quotation marks omitted). Second, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The

likelihood of a different result must be substantial, not just conceivable." <u>Harrington</u>, 131 S. Ct. at 792.

Although developed in the context of ineffective assistance of trial counsel claims, the <u>Strickland</u> standard applies equally to claims of ineffective assistance of appellate counsel. <u>Aparicio</u>, 269 F.3d at 95. "On appeal, counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims. . . . [I]nadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>King v. Greiner</u>, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983)). A petitioner must prove that there is a reasonable probability that the unraised claims would have succeeded in the state's highest court. <u>Id.</u> at 182-83 (citing <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992)).

When ineffective assistance of counsel claims are presented on habeas review, the court assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (citing <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6 (2003) (per curiam)); <u>see</u> 28 U.S.C. § 2254(d). In order to prevail, petitioner must show not only that counsel's performance fell below the <u>Strickland</u> standard of reasonableness, but also that the state court's adjudication of the <u>Strickland</u> standard was itself unreasonable and not merely incorrect. <u>See</u> <u>Harrington</u>, 131 S. Ct. at 785.

Here, petitioner's appellate counsel raised four arguments on direct appeal: that the identification evidence offered at trial failed to prove petitioner's guilt beyond a reasonable doubt, that the verdict was against the weight of the evidence, that petitioner's sentence was

excessive, and that the court had considered improper factors in sentencing petitioner to 50 years to life imprisonment. Counsel was in regular communication with petitioner, and letters attached to petitioner's coram nobis petition evidence appellate counsel's reasoned consideration of numerous alternative claims that petitioner apparently suggested counsel raise on appeal. After the Appellate Division decided against petitioner, appellate counsel, although she was under no obligation to do so, filed an application seeking leave to appeal to the Court of Appeals. See Ross v. Moffitt, 417 U.S. 600, 611 (1974) (holding that no right to counsel attaches to discretionary appeals of criminal convictions).

Petitioner nonetheless alleges that appellate counsel committed the following errors: failure to raise a double jeopardy claim based on the legal insufficiency of the evidence presented at petitioner's first trial; failure to appeal the admission of the recording of Natasha Huggins's 911 call; failure to argue ineffective assistance of trial counsel; and failure to expand the record to include information supporting additional claims of police and prosecutorial misconduct.

Given the weaknesses of these claims, as set forth below, and the advocacy that appellate counsel did exercise on petitioner's behalf, the court finds that appellate counsel's performance was not constitutionally deficient.


### 1.     Failure to Raise a Double Jeopardy Claim

Petitioner alleges that his appellate counsel was ineffective for not arguing that petitioner's second trial violated the Double Jeopardy Clause.

Double jeopardy prohibits the retrial of a defendant where the defendant's motion for dismissal of a prosecution ultimately declared a mistrial should have been granted on the ground

of legally insufficient evidence. People v. Dann, 474 N.Y.S.2d 566, 568 (App. Div. 1984); People v. Tingue, 548 N.Y.S.2d 429, 430-31 (App. Div. 1983). A double jeopardy claim will be successful on appeal if the court, "review[ing] the evidence [from the first trial] in the light most favorable to the government, drawing all reasonable inferences in its favor," finds that "no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." United States v. Gaskin, 364 F.3d 438, 459-60 (2d Cir. 2004); accord People v. Bauer, 497 N.Y.S.2d 115, 116 (App. Div. 1985).

In petitioner's first trial, the prosecution presented two witnesses, Natasha Huggins and Angus Mitchell, who identified petitioner in court. Natasha Huggins also testified to her identification of petitioner in the police lineup, and Mitchell testified that while he recognized petitioner's face in the lineup, petitioner's weight loss prevented him from making a definitive identification. Two additional witnesses, Ezekiel Briggs and Bernard Rogers, provided general descriptions of the build and complexion of the man who accompanied Brian McCaskill and Claude Long to the parking garage. Their descriptions were consistent with the testimony of Natasha Huggins and Mitchell as well as the restaurant surveillance footage, and their descriptions matched petitioner's physical characteristics.

In light of this evidence, petitioner would have been unable to carry his burden of establishing the insufficiency of the evidence in the first trial. A reasonable jury could have credited the testimony highlighted above and found proved petitioner's identity as the shooter. Cf. Hernandez v. Lee, No. 10-CV-4667 (JFB), 2014 WL 1407274, at *10 (E.D.N.Y. Apr. 11, 2014) (holding that rational trier of fact could find petitioner properly identified as stabber where sole eyewitness had identified petitioner in lineup, but could not identify him in court where his physical appearance was slightly different).

Given the weakness of petitioner's insufficiency claim with respect to the first trial, appellate counsel's decision not to advance a double jeopardy claim was not a professional error, nor could it have prejudiced petitioner in any way.[4] Thus, appellate counsel was not ineffective for failing to argue double jeopardy on appeal.[5]

## 2.    Failure to Appeal the Admission of the 911 Recording

Petitioner argues that his appellate counsel should have appealed the admission of the recording of Natasha Huggins's 911 call in petitioner's second trial. In the first trial, the court excluded the recording because Natasha Huggins herself testified to the fear she felt after her brothers' murders and thus, the court stated, the probative value of the recording was outweighed by the risk of prejudice. In the second trial, plaintiff's trial counsel sought exclusion on the same ground, but the court determined that the risk of prejudice was not high enough to warrant exclusion. The court ultimately admitted the recording under the excited utterance exception to the hearsay rule.

Petitioner now contends that appellate counsel should have appealed the evidentiary ruling in the second trial on the grounds that the recording's admission violated the law of the case, that the recording had not been authenticated, that the recording had not been transcribed, and that the recording was improperly admitted as a prior consistent statement.

---

[4] Petitioner questions appellate counsel's decision to prioritize the unpreserved insufficiency claim from the second trial over the double jeopardy claim arising from the first. It is true that the evidence at the first trial included one fewer eyewitness identification of the petitioner than did the evidence at the second. Further, there is no clear requirement in New York that double jeopardy claims be preserved for appellate review. See People v. Scerbo, 903 N.Y.S.2d 621, 623 (App. Div. 2010); People v. Smith, 778 N.Y.S.2d 615, 617 (App. Div. 2004). But see People v. Farakesh, 664 N.Y.S.2d 364, 365 (App. Div. 1997). However, petitioner's case is clearly not one in which "counsel overlooked a 'sure winner' and focused only on clearly losing arguments," Clark v. Stinson, 214 F.3d 315, 328 (2d Cir. 2000), and the decision to advance one weak insufficiency claim over another does not render appellate counsel's performance constitutionally deficient.

[5] Petitioner's related argument—that appellate counsel was ineffective for not ordering the transcript of the first trial—also fails. Counsel cannot be deemed ineffective for failing to take a step whose sole purpose would have been to advance a meritless double jeopardy argument on appeal.

Each of these arguments is without merit. First, while the law of the case doctrine instructs that "a court should not ordinarily reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction," Dondi v. Jones, 351 N.E.2d 650, 656 (N.Y. 1976), "an 'evidentiary' type ruling will normally not be binding in a subsequent trial." People v. Evans, 727 N.E.2d 1232, 1236 (N.Y. 2000); accord People v. Malizia, 465 N.E.2d 364, 366 (N.Y. 1984). The first trial court's discretionary decision not to admit the recording into evidence provides petitioner no basis on which to challenge its admission in the second trial.

Second, authentication of a tape recording can be achieved through the "[t]estimony of a participant in the conversation that [the recording] is a complete and accurate reproduction of the conversation and has not been altered." People v. Ely, 503 N.E.2d 88, 92 (N.Y. 1986) (collecting cases). Natasha Huggins provided such testimony in the second trial.

Third, the fact that a properly authenticated recording has not been transcribed, without more, is not "necessarily or even usually suspect." People v. Savino, 376 N.E.2d 196, 198 (N.Y. 1978). Petitioner presents no reason why the lack of transcription of the 911 recording is cause for concern in this case.

Lastly, petitioner's argument that the recording was improperly admitted as a prior consistent statement mistakes the ground on which the trial court admitted the recording. It is true that the recording contains a prior consistent statement because on it Natasha Huggins twice screams "Bezo," the nickname of Brian McCaskill, and at the second trial she testified that McCaskill was with the shooter the night of the murders. However, while there are limitations on the admission of prior consistent statements, these limitations are irrelevant where the statement is admitted under an independent exception to the hearsay rule. People v. Buie, 658 N.E.2d 192, 197 (N.Y. 1995). Here, the court admitted the recording under the excited utterance exception,

18

which allows an out-of-court statement to be introduced where the declarant was "under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful." People v. Edwards, 392 N.E.2d 1229, 1231 (N.Y. 1979). Petitioner does not contest the determination that the 911 call was an excited utterance. Thus, the mere fact that the recording contains a prior consistent statement has no bearing on whether the recording was properly admitted.

Because the arguments that petitioner claims that appellate counsel should have made are all lacking in merit, appellate counsel's failure to challenge the admission of the 911 recording on these grounds cannot be considered ineffective.

### 3.    Failure to Argue Ineffective Assistance of Trial Counsel

Petitioner argues that his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel on direct appeal. In support of this claim, petitioner launches a litany of allegations against his trial counsel. While the specific errors alleged are not easy to ascertain, the court has endeavored to address all of his numerous contentions.

The court can easily dispose of many of petitioner's claims against trial counsel for reasons already discussed. Petitioner argues that trial counsel was ineffective for (1) failing to properly preserve challenges to the sufficiency of the evidence in the first and second trials, (2) failing to object to the admission of the 911 recording on law-of-the-case grounds, and (3) failing to argue that the non-prosecution of Brian McCaskill exculpated petitioner. None of these arguments would have been successful if raised, and appellate counsel is under no obligation to pursue an ineffective assistance of trial counsel claim based on trial counsel's failure to raise losing arguments.

19

Petitioners' remaining allegations relate to the circumstances surrounding his arrest. In this regard, petitioner appears to contend that trial counsel was ineffective for failing to request a Payton hearing in order to seek suppression of the lineup identifications on the ground that the police's actions at petitioner's home violated the rule set forth in Payton v. New York, 445 U.S. 573 (1980).[6]

In Payton, the Supreme Court ruled that absent exigent circumstances or consent to entry, the warrantless arrest of an individual inside his or her home violates the Fourth Amendment. Id. at 587-90. The Payton rule holds even where there is probable cause for an arrest. In New York, an arrest supported by probable cause but in violation of Payton generally requires the suppression of post-arrest statements made outside the presence of counsel. People v. Harris, 570 N.E.2d 1051, 1055 (N.Y. 1991). Such an arrest does not, however, require the suppression of post-arrest lineup identifications, unless the identifications themselves were a "product of" the Payton violation. People v. Jones, 810 N.E.2d 415, 421-22 (N.Y. 2004) (upholding admission of lineup identifications despite Payton violation where witnesses' identification of the defendant in a photo array had supplied probable cause for arrest in defendant's home).

Petitioner's case is indistinguishable from Jones. Prior to the police's visit to petitioner's home, Lavar Edwards identified petitioner in a photo array as the individual who allegedly killed Christian Throne and Tyrell Huggins. Detective Hennigan testified to Edwards's photo array identification as well as the photo array's composition at petitioner's Huntley/Wade hearing. When petitioner's trial counsel closed the Huntley/Wade hearing by requesting a Dunaway hearing, the prosecution argued that Edwards's photo array identification established probable cause and thus the Dunaway hearing would simply amount to further discovery. Adopting this

---

[6] Petitioner argues that his post-arrest statements should have been suppressed on Payton grounds as well. Because these statements were not introduced at trial, the court will focus on whether trial counsel was ineffective for not pursuing a Payton hearing in order to seek exclusion of the lineup evidence.

position, the hearing judge denied the <u>Dunaway</u> request.[7] Petitioner points to no evidence on the record that would undermine the conclusion that there was probable cause for his arrest.[8]

The existence of probable cause here, just as in <u>Jones</u>, would permit the admission of the lineup identifications even if a <u>Payton</u> violation had actually occurred. As a result, petitioner can show no prejudice from trial counsel's decision not to request a <u>Payton</u> hearing, and appellate counsel committed no error in choosing not to argue trial counsel's ineffectiveness on this ground.[9]

### 4. Failure to Expand the Record

Finally, petitioner argues that his appellate counsel should have enlarged the record to include evidence of police and prosecutorial misconduct, which would have lent support to various claims related to the circumstances surrounding petitioner's arrest. In New York, the proper vehicle to advance claims that turn on matters outside of the record is a collateral attack on a conviction pursuant to Criminal Procedure Law § 440.10. <u>Lugo v. Kuhlmann</u>, 68 F. Supp. 2d 347, 374-75 (S.D.N.Y. 1999) (collecting cases).

An ineffective assistance of counsel claim will fail where it relates to a proceeding for which no right to counsel exists. <u>See</u> <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88 (1982) (per curiam) (holding that because "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals," "he could not be deprived of the effective

---

[7] The hearing judge later characterized his decision in a slightly different manner, stating that petitioner's request for a <u>Dunaway</u> hearing "was a request to obtain additional discovery and was not a challenge to the adequacy of the probable cause."

[8] Petitioner's briefs contain many allegations that are wholly unsubstantiated by the record, including one that the police fabricated the photo array identification underlying the prosecution's probable cause argument. The court cannot rely on information outside of the record in its assessment of appellate counsel's decision not to pursue an ineffective assistance of trial counsel claim.

[9] To the extent that petitioner claims that <u>appellate</u> counsel was ineffective for not arguing the <u>Payton</u> issue, the same reasoning applies.

assistance of counsel by his retained counsel's failure to file [a timely] application" for discretionary review by the Florida Supreme Court); accord Coleman, 501 U.S. at 756-57 (1991). Here, because there is no right to counsel to pursue collateral relief under § 440.10, petitioner's claim that his appellate counsel should have expanded the record through a § 440.10 motion must fail. Lugo, 68 F. Supp. 2d at 376 (reaching same conclusion where petitioner alleged that counsel was "ineffective for failing to bring a CPL § 440.10 collateral attack on the ground of newly discovered evidence").

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Petitioner may seek such a certificate from the Second Circuit Court of Appeals. The Clerk of Court is directed to enter judgment accordingly.


SO ORDERED.

/S/ Judge Allyne R. Ross
Allyne R. Ross
United States District Judge


Dated:        September 26, 2014
              Brooklyn, New York

**SERVICE LIST**

Petitioner:

Wilfredo Aviles
08A6675
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562